[Filed April 7, 1890.]

.E. C. BUMP, RESPONDENT, *v.* J. S. COOPER, APPELLANT.

CONTRACT—CONSTRUCTION OF.—Where a contract fixed the price for the sale of a certain quantity of hops to be delivered in a good and merchantable condition, etc., but contained a further provision giving the benefit of the rise in the market to the seller, with the privilege of closing the sale within a time specified ; *held,* that the provision was intended for the benefit of the seller, and if he failed to exercise the privilege and close the sale within the time limited, it became *functus officio,* and the time fixed by the contract became the price agreed to be paid.

CONTRACT—MEASURE OF DAMAGES.—In the event that the hops were not sound and merchantable, as contracted for, the measure of damages would be the difference between the value of the hops, as fixed by the contract price at the time and place of their sale and delivery, and their value with the defect complained of.

APPEAL from Benton county: R. S. BEAN, judge.

LORD, J., delivered the opinion of the court.

This was an action to recover money, founded upon a written contract.   The contract, omitting immaterial parts,

is as follows: That "the party of the first part (plaintiff Bump) does hereby agree to sell and doth sell and agree to deliver, or to cause to be delivered, to the party of the second part (defendant Cooper) all her crop of hops, the growth of the year 1888, the said hops to be of good first quality, well baled and put up in good merchantable order and condition, in bales of about one hundred and eighty-four pounds, etc.; said hops to be delivered in lots of not less than eight bales, at Independence, between this date and the first day of November, 1888, and in consideration thereof, the party of the second part agrees to pay the party of the first part, in full payment for said hops, the sum of twelve cents per pound after delivery to and acceptance by said party of the second part. It is further agreed that said E. C. Bump is to have the benefit of rise in market value, with privilege of closing the sale at market price until the fifteenth day of November, 1888." This is followed by an allegation, "that the rise in the market value over and above said twelve cents per pound mentioned in the contract, etc., was four cents additional up to said day of November, 1888," etc. After making certain denials, defendant set up affirmatively in substance that the plaintiff failed to furnish and deliver good first quality baled hops, put up in good merchantable order or condition, etc.; that plaintiff represented said hops to be of good first quality and in a merchantable condition, etc., and that said representations and warranty were untrue, and that by reason of said damaged condition of said hops, etc., the same were worth no more than four cents per pound at Independence, etc.

The reply denied specifically each and every allegation set up in the defendant's separate defense.

Upon trial the jury found a verdict for the plaintiff upon which the court rendered a judgment, from which the plaintiff has appealed to this court. The first question is, as to the construction of the contract. Under the contract, the price of the hops, if they were properly baled and delivered in a good and merchantable condition, was fixed

at twelve cents a pound, unless the plaintiff exercised the privilege of closing the sale for any rise in the market, which should occur within the time limited.    The provision is, that the plaintiff "is to have the benefit of the rise in the market· value with the privilege of closing the sale at market price until the fifteenth day of November, 1888." This provision was inserted for the benefit of the plaintiff, and if she neglected to avail herself of it, and close the sale, when the rise in hops should happen, within the time prescribed, it became *functus officio,* and the price fixed by the contract at twelve cents became the price agreed to be paid.    It is a privilege which she must exercise or act upon by closing the sale, and which she forfeits by failing or refusing to avail herself of it before the expiration of the time specified.    If the hop market, instead of rising, should decline, the plaintiff would have no occasion to exercise the privilege and would be entitled to the price fixed in the contract.    On the other hand, if there was a rise in the hop market, and she failed to act upon it and close the sale at such increased price, within the time allowed, the privilege was gone, and the price fixed by the contract prevailed.    Under the allegation in the complaint, the plaintiff was permitted to prove the rise in the market value of hops to be four cents additional over the price fixed in the contract, or sixteen cents a pound, up to the time specified, without alleging that the privilege was exercised and the sale closed at the increased market price within that time.    The plaintiff could not do this unless it was alleged that the sale was closed, under the provision, by an exercise of the privilege it granted; for otherwise the price was fixed ·by the contract and the defendant was not liable beyond it.    To permit such testimony was not only misleading, but it was unauthorized, for it permitted the jury, as they did do, to find a verdict for a price and an amount not warranted by the contract, unless the plaintiff availed herself of the privilege and closed a sale with the defendant within the time limited, and the fact was so alleged.

The bill of exceptions discloses that the defendant Cooper was called and sworn as a witness in his own behalf, and gave evidence tending to show that the hops delivered to him by the plaintiff were worthless, and that there was no market for said hops at Independence; that he tried repeatedly to sell them, but that he could not find a buyer on account of their not being merchantable, and in a damaged condition.

On cross-examination he was asked the following question: "Did you sell the hops afterwards, and after the sixteenth day of November, 1888, and if so, when and for how much?" To which question objection was made and overruled by the court, and the witness then, among other things, proceeded to testify, that "in February, 1889, he shipped the remainder of said hops to Cincinnati, Ohio, and sold the same;—a part for twelve cents a pound net at Independence, and the remainder for fourteen cents a pound net at Independence, about one-half for twelve cents, and about one-half for fourteen cents."

The objection to this testimony is that the plaintiff was bound to make good his contract at the time and place agreed on, and that he cannot discharge that obligation by inquiring into the sale, three months afterwards, or at another place. Under the pleadings as the case stands, the defendant was treated as the owner of the hops after delivery under the contract; and if the hops were of the quality, properly bailed in the condition bargained for, the defendant was liable for the amount fixed by the contract, unless the defendant should be able to make his defense good, and show that they were either worthless or not merchantable, or in a damaged condition. In that event the measure of damages would be the difference between the value of the hops, as fixed by the contract price at the time and place of their sale and delivery, considered as sound, and their value, with the defect complained of. What this value was, if the hops were in a damaged condition but had a marketable value, had reference to that time and in that market, or the nearest mar-

ket. What the defendant might sell such hops for several months, or as to that, years afterwards, was a matter of his own concern, and the price he would receive would depend on the scarcity of the article or condition of the market, and might be greater or less, and in no event could affect the issue involved. As the case must go back, it is not necessary to be more particular as to this matter, as the theory upon which the action was tried was inconsistent with the terms of the contract.

The judgment must be reversed and a new trial ordered.